Virginia KAUFFMAN, Plaintiff,

v.

KENT STATE UNIVERSITY,
et. al., Defendants.

No. 5:91 CV 938.

United States District Court,
N.D. Ohio, E.D.

Feb. 17, 1993.

Edward L. Gilbert, Law Offices of Edward L. Gilbert, Akron, OH, for plaintiff.

Dennis R. Wilcox and Jack D. Maistros, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, for defendants.

## ORDER

SAM H. BELL, District Judge.

### I. Introduction

This matter comes before the court on defendants' motion for summary judgment, Docket # 43. This civil rights case was commenced with the filing of a complaint on May 15, 1991. An amended complaint was filed on the 29th of July, 1991. The named defendants are Kent State University ("KSU"), a state university, and Chester Williams and Ann Metham, two employees of the University.[1] Plaintiff alleges that she was hired by the University in 1979 and was assigned a position in the Physical Plant Department of the institution. There, plaintiff claims that she was "forced to perform clerical duties in furtherance" of the personal, rather than official business of Mr. Williams. Plaintiff claims that when these duties began to interfere with plaintiff's official responsibilities,

she complained, presumably to higher authorities. Plaintiff states that "as a result of said complaints, Chester Williams used his position and color of state law to deny plaintiff a promotion to Office Manager. Instead, Plaintiff hired a younger person with less skills, name Co–Defendant, Ann Metham." (Amended Complaint at ¶ 20). Plaintiff avers that Metham and Williams began a campaign to remove her from the Department and that she "was given poor evaluations commencing in March 1990." (Amended Complaint at ¶ 21) Plaintiff complains that the poor evaluations were given in retaliation for the complaints plaintiff had made in regards to defendants Metham and Williams. Finally,

Plaintiff states that the working conditions became so intolerable that she was forced to transfer from the unit to a separate facility, in the same department. Defendant Williams, however, maintained direct control over Plaintiff's salary and general day-to-day duties in a further effort to intimidate plaintiff.

(Amended Complaint at ¶ 24)

On the basis of these alleged facts, plaintiff brought six causes of action. The first cause of action, brought pursuant to Section 1983, claimed that defendant Williams deprived plaintiff of her due process and equal protection rights secured by the Fourteenth Amendment. The second claim alleges identical constitutional deprivations at the hands of Kent State and Williams. The third claim, premised upon KSU's and Williams's failure to consider plaintiff for the promotion position and failure to post and notify employees of the same, denied plaintiff her constitutional rights as alleged in the foregoing counts and, because these omissions were purportedly motivated by plaintiff's age, constituted a violation of the ADEA. In her fourth count, plaintiff avers that Ann Metham "gave Plaintiff unfair, improper and discriminatory job evaluation", purportedly in violation of Section 1983 and, because these acts were purportedly motivated by plaintiff's age, con-

---

1. There is an apparent disagreement over the spelling of one defendant's surname. The defendant has used the spelling "Metham", while plaintiff refers to this defendant as Ann "Meth-

an". The court has, for the sake of simplicity, adapted itself to the spelling used by the defendant Metham to identify herself.

stituted a violation of the ADEA. In her fifth count, plaintiff claims that KSU has a policy of allowing its supervisors "broad discretion to discriminate", forcing plaintiff to transfer to a less preferable job. This, plaintiff claims, violations both Section 1983 and the ADEA. Plaintiff's sixth and final claim was brought pursuant to Ohio Rev.Code § 4112.02, Ohio's civil rights statute, and was based upon the all foregoing allegations.

The defendants moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On January 29, 1992, that motion was granted in part and denied in part. *Kauffman v. Kent State Univ.*, No. 91–CV–938, slip op. (N.D.Ohio Jan. 29, 1992) (order granting partial dismissal) [hereinafter "dismissal order"]. As a result of that opinion:

> Plaintiff's causes of action under 42 U.S.C. § 1983 and O.R.C. § 4112.02 are dismissed in their entirety. Thus, the court hereby dismisses Count One, Count Two and Count Six in full. We also dismiss those portions of Counts Three, Four, and Five which allege a violation of 42 U.S.C. § 1983. However, that portion of defendants' motion dealing with the ADEA is denied; thus, those portions of Counts Three, Four and Five which allege violations of the ADEA will remain in this cause.

(Dismissal Order at 41). Consequently, plaintiff's sole remaining claim is that KSU, Williams and Metham violated the Age Discrimination in Employment Act as alleged in counts three, four and five.

As noted above, defendants have moved for summary judgment on this claim. The defendants aver that the facts in evidence will establish the following:

> 1) That "[d]efendants Williams and Metham are not employers within the meaning of the ADEA and thus they are not subject to suit pursuant to the ADEA";
>
> 2) That plaintiff "cannot establish the necessary elements of a *prima facie* case of age discrimination under the ADEA"; and
>
> 3) If one assumes, "*arguendo* that Plaintiff can establish a *prima facie* case, Plaintiff has failed to rebut the Defendants' legiti-

mate business reasons for their personnel decisions.

(Defendants' Motion for Summary Judgment, Docket # 43 at 5–6) [hereinafter "Defendants' Motion"]. The court shall address these contentions *seriatim*.

## II. Standard of Review

In reviewing a motion for summary judgment, a court must consider the pleadings, related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

> (c) . . .
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
>
> .  .  .  .  .
>
> (e) . . .
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its oppo-

nent must do more than simply show that there is some metaphysical doubt as to the material facts ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ. Proc. 56(e)." *Matsushita,* 475 U.S. at 586–587, 106 S.Ct. at 1355–56 (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15.

On the other hand, the moving party's burden under Rule 56 is lighter.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex, supra,* at 323, 106 S.Ct. at 2552–53 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.,* 886 F.2d 1472 (6th Cir.1989) recently reviewed court decisions and commentary regarding the impact of *Anderson, Celotex,* and *Matsushita* on summary judgment practice. The court

concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact and tended to emasculate summary judgment as an effective procedural device.

*Street, supra,* at 1476.

■ The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–1480 (footnotes and citations omitted).

## III. Law and Analysis

### A. "Employer" Liability under the ADEA

■ As noted above, the defendants' first grounds for summary judgment is that defendants Williams and Metham are not "employers" as that term is defined in the ADEA and are therefore not subject to liability thereunder. This argument has merit.

Section 623 of the ADEA establishes liability in the following manner:

It shall be unlawful for an *employer—*
(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1) (emphasis added). Thus, liability turns upon a defendant's status as an "employer". The term "employer" is defined by the ADEA as follows:

The term *"employer" means a* **person** engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year

. . . . .

The term also means (1) any *agent of such person,* and (2) a *State or* political subdivision of a State and any *agency or instrumentality of a State* or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

29 U.S.C. § 630(b) (emphasis added). As this section makes clear, States and their subdivisions are considered "employers" for the purposes of the ADEA. The defendants in question, however, are clearly neither States, nor subdivisions of a State. Rather, it is not disputed that defendants Williams and Metham are agents of an instrumentality of the State, persons conspicuously absent from Section 630(b)(2)'s definition. We must, therefore, look to the operation of Section 630(b)(1), which includes within the definition of "employer" the "agent of . . . a person . . . engaged in an industry affecting commerce who has twenty or more employees for each working day. . . ." 29 U.S.C. § 630(b)(1). The defendants are clearly agents. Consequently, the question is whether they are agents of a "person". The term "person" means "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized group of person." 29 U.S.C. § 630(a). States and their subdivisions are not included within this definition, and the instant plaintiff makes no argument to that effect. Clearly, then, the plain wording of the statute precludes a conclusion that defendants Williams and Metham are "employers" under the ADEA. Simply put, they are not "States" and are not "agents . . . of a 'person'" as that term is defined in the Act. Most courts which have considered this question, including one within this Circuit, have come to the same conclusion. *See, e.g., Johns v. Kirby,* No. C-2-86-1496 slip op., 1990 WL 484832, 1990 U.S.Dist. LEXIS 18689 (S.D.Ohio Nov. 7, 1990) (Holschuh, C.J.). *See also Wanner v. State of Kansas,* 766 F.Supp. 1005 (D.Kan.1991); *Tranello v. Frey,* 758 F.Supp. 841 (W.D.N.Y.1991), *aff'd,* 962 F.2d 244 (2d Cir.1991), *cert. denied sub nom, County of Monroe v. Tranello,* —— U.S. ——, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992); *Sagarino v. Town of Danvers,* 750 F.Supp. 51 (D.Mass.1990); *Price v. County of Erie,* 654 F.Supp. 1206 (W.D.N.Y.1987); *Young v. Sedgwick County,* 660 F.Supp. 918 (D.Kan. 1987); *McCroan v. Bailey,* 543 F.Supp. 1201 (S.D.Ga.1982).

In an effort to circumvent this conclusion, the plaintiff has not disputed that the defendants are excluded under the plain terms of the Act. Rather, she directs this court to two cases from outside this Circuit which "relied upon comparable Title VII provisions to conclude that agents of state agencies are "employers" within the meaning of the ADEA." (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket # 45 at 5) [hereinafter "Plaintiff's Response"]. This court is not convinced. As cogently noted by a court considering this argument:

[T]o find no distinction between the Title VII and the ADEA definitions of employer simply because of the policy behind the statutes borders on judicial activism in its plainest sense. In enacting the ADEA, Congress explicitly excluded states and their political subdivisions from the definition of person, opting rather to include them as a separate and distinct liability of (1) agents of persons and (2) states and political subdivisions. Congress made no provision for agents of states and political subdivisions. It would have only required the insertion of the short phrase "and their agents" in 29 U.S.C. § 630(b)(2) to express Congress' intent to hold individuals such as these defendants liable for age discrimination. If ever the maxim *expressio unius est exclusio alterius* is applicable, it is this situation. This court cannot invalidate the express terms of a federal statute under the guise of applying a policy of liberal construction, regardless of the ultimate ends that would be furthered.

*Wanner v. State of Kansas,* 766 F.Supp. 1005, 1007 (D.Kan.1991) (citation omitted). The individual defendants in this case "are not 'employers' within the meaning of the ADEA and are therefore not subject to personal liability under the Act." *Johns v. Kirby,* 1990 U.S.Dist. LEXIS 18689, *14 (S.D.Ohio 1990). With this established, we must now turn to the question of the University's liability.

### B. *Prima Facie* Showing

As noted above, the defendant's second basis for summary judgment is the plaintiff's inability to establish a *prima facie* case. As recently noted by the Sixth Circuit:

> The elements of a *prima facie* case of age discrimination require that the charging party demonstrate that (1) she was the member of the protected class, i.e., that she was between the ages of 40 to 65 years of age; (2) that she was subjected to adverse employment action; (3) that she was qualified for the particular position; and (4) that she was replaced by a person not a member of the protected class.

*Gagne v. Northwestern National Insurance Co.,* 881 F.2d 309, 313 (6th Cir.1989). The defendants concede that plaintiff is a member of the protected class and that the person who benefitted from the alleged discrimination, Ms. Metham, was not a member of that class. (Defendants' Motion at 14). Thus, with regards to the establishment of a *prima facie* case, we are concerned with the second and third elements, to wit: the subjection of plaintiff to adverse employment action, and her qualification for the position in question. Plaintiff's complaint indicates that she complains of the following adverse employment actions: 1) failure to consider plaintiff for the promotion position and failure to post and notify employees of the same, 2) unfair, improper and discriminatory job evaluations, and 3) the transfer to a less preferable job. In response to the defendants' motion, the plaintiff concedes that she "is unable to prove that Defendant Metham's evaluation consti-

tutes an adverse employment action, and thus the Plaintiff is unable to establish her *prima facie* burden regarding Count Four of the Amended Complaint." (Plaintiff's Response at 11) Hence, we are concerned with plaintiff's transfer to a less desirable position and the defendants' failure to post and consider plaintiff for a promotion. The court shall address these employment actions vis-a-vis plaintiff's establishment of a *prima facie* case.

### i. Transfer

■ In regards to plaintiff's transfer, the defendants argue that Ms. Kauffman cannot establish the second element of a *prima facie* case, subjection to an adverse employment action. In the instant case, plaintiff claims that an intra-departmental transfer constitutes adverse employment action because she has less work to keep her busy and has both a lessened opportunity for a promotion to the Office Manager position and a lessened opportunity to "fill[ ] in for said position" when the Office Manager is on leave. (*See* Kauffman Aff. at § 5–6). It is undisputed that plaintiff, after her transfer, enjoys the same title and compensation as she did prior to her reassignment.[2] (Kauffman Depo. at 112) Plaintiff also admitted at her deposition that she enjoys her current assignment:

> Q. Do you enjoy where you are working now?
>
> A. I do now, yes, uh-huh. I didn't have much choice but to go there.
>
> Q. But you don't have a problem working there now?
>
> MR. GILBERT: Well, objection. Go ahead and answer if you know.
>
> THE WITNESS: I don't—you know, I don't have an objection to where I'm working now, no, but I feel I was forced to be reassigned.

(Kauffman Depo. at 177) On the basis of this record, this court simply must conclude that there is no genuine issue that plaintiff's

---

**2.** This court presumes that there is a factual issue over how this transfer came about. In a May 9, 1990 letter to the Director of her department, plaintiff stated: "I wish to be transferred to the Heating Plant as you previously requested and feel the sooner the better." (*See* Defendants' Exhibit D) At deposition, however, plaintiff stated that she was "told to put that in by [a KSU employee]". (Kauffman Depo. at 107)

transfer was not an adverse employment action for the purposes of the ADEA.

As one court within this Circuit recently commented, "[t]he clear trend of authority is to *require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action'.*" *Darnell v. Campbell County Fiscal Court*, 731 F.Supp. 1309, 1313 (E.D.Ky.1990) (emphasis added), *aff'd*, 924 F.2d 1057 (6th Cir.1991). This conclusion, drawn from the well-reasoned opinions of the Seventh Circuit, is premised upon the supposition that:

> [T]he ADEA is not intended to prevent employers from changing the job responsibilities of their 40–70 year old employees. Neither is the Act intended to give 40 to 70 year old employees the right to walk out and sue their employer because they dislike their changed job responsibilities. To establish a violation of the ADEA, therefore, a plaintiff must prove that she suffered a *materially adverse* change in the terms and conditions of her employment because of her employer's discriminatory conduct.

*Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.1989) (citations and parentheticals omitted). By way of example, one case is particularly instructive.

In *Addams v. City of Chicago*, 1992 WL 348848, 1992 U.S.Dist. LEXIS 17542 (N.D.Ill. 1992), the plaintiff was employed as director of a municipal AIDS counselling service. In her complaint, she alleged that she was transferred and as a result of that transfer "lost her support staff, including a secretary, a staff assistant and data entry personnel." *Id.*, 1992 WL 348848, at *1, 1992 U.S.Dist. LEXIS 17542 at *1. The plaintiff claims that the transfer constituted a de facto demotion although her job title, duties, responsibilities and compensation remained the same. The plaintiff claimed that her transfer was motivated by the age-based animus of her supervisor, a thirty two year old. The court granted the defendants' motion for dismissal pursuant to Rule 12(b)(6), finding that plaintiff had not made sufficient allegations in regards to one element of a *prima facie* case, subjection to an adverse employment action. *Id.*, 1992 WL 348848, at *4, 1992 U.S.Dist. LEXIS 17542 at *8. The court, although acknowledging that plaintiff now had to "perform[ ] clerical and ministerial duties", nevertheless concluded that plaintiff "fail[ed] to allege facts indicating any employment action on the part of defendants that is sufficiently adverse to support an ADEA claim." *Id.*, 1992 WL 348848, at *5, 1992 U.S.Dist. LEXIS 17542 at *8–9. The Illinois court, noting that this conclusion was sustained by both Seventh and Sixth Circuit case law, engaged in the following analysis:

> [P]laintiff contends that her changed job conditions amount to a constructive discharge in reliance upon the *Darnell* court's observation that a transfer accompanied by diminished prestige and objectively demeaning changed in working conditions may amount to a constructive discharge actionable under the ADEA. However, what [plaintiff] fails to add is that the *Darnell* court's statement that "*barring unusual circumstances,* proof of which is totally lacking here, *a transfer at no loss of title, pay or benefits does not amount to a constructive discharge or adverse employment action.*"

1992 WL 348848, at *4, 1992 U.S. Dist. LEXIS 17542, at *11–12 (emphasis added). With this law established, we must now turn to the case at bar.

▆▆▆ In the case at bar, it is not disputed that this is a transfer with "no change in wages or benefits." *Darnell*, 731 F.Supp. at 1313. As such, plaintiff's transfer must "amount to a 'constructive discharge' to be actionable as an 'adverse employment action'." *Id.*[3] As noted above, plaintiff com-

---

**3.** As Judge Bertelsman noted in his *Darnell* opinion, "[i]n *retaliation* cases, the courts are more willing to redress transfers involving changes of working conditions, with no loss of pay or benefits." *Darnell*, 731 F.Supp. at 1313 n. 2.

In the instant case, plaintiff's complaint "alleges retaliation after the filing of the original complaint." (Amended Complaint at ¶ 5) The nature of this "original complaint", is not recounted by the complaint. Plaintiff's complaint does state that she "complain[ed]" about having to do her supervisor's personal work while on the job at the University. (*Id.* at ¶ 19) Such a complaint, of course, would not give rise to a retalia-

plains that her transfer resulted in less work to keep her busy, and a lessened opportunity for a promotion to the Office Manager position and a lessened opportunity to "fill[ ] in for said position" when the Office Manager is on leave (*See* Kauffman Aff at § 5–6). Our question then, is whether these allegations could lead to a conclusion that plaintiff was constructively discharged. Our conclusion, of course, is that they do not. Our Circuit Court, in its affirmance of the *Darnell* opinion, stated:

> We agree with the approach used by the district court.... An employees rejection of a lateral transfer is always actionable as an "adverse employment action" if the conditions of transfer *would have been objectively intolerable to a reasonable person, thereby amounting to a "constructive discharge."* In determining whether a lateral transfer would be intolerable to a reasonable person, the following non-exhaustive list of factors have been considered: increased distance from home to new position, decrease in salary, grade level or benefits, and changes in job duties and/or responsibilities.

*Darnell v. Campbell County Fiscal Court,* 1991 WL 11255, at *3, 1991 U.S.App. LEXIS 1755, at *7–8 (6th Cir.1991) (citations omitted). Applying these principles to the case at bar leads to an inevitable result, which is contrary to plaintiff. The first two factors are simply not implicated by the case at bar. The third factor, is, at best, only marginal proof that the plaintiff's transfer was "intolerable". *Id.; see also D'Aquino v. Citicorp/Diner's Club, Inc.,* 755 F.Supp. 218, 221 (N.D.Ill.1991) ("courts have questioned whether the ADEA should be used as a vehicle to challenge changed job responsibilities which cause no materially significant disadvantage to an older employee.") A consideration of these factors should, of course, tend to prove that "the conditions of the transfer would have been objectively intolerable to a reasonable person." 1991 WL 11255, at *3, 1991 U.S.App. LEXIS 1755, at *7–8. Their consideration here, however, tends to prove the opposite. Indeed, plaintiff's own testimony indicates that her new position is not only tolerable, but also is pleasurable. (*See* Kauffman Depo. at 177 "Q: Do you enjoy where you're working now? A: I do now, yes, uh-huh ... I don't have an objection to where I'm working now, no....") Plaintiff's proof on this issue constitutes no more than a scintilla of evidence, insufficient to overcome the defendants' motion. *See Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; *there must be evidence of which the jury could reasonably find for the plaintiff.*") (emphasis added, cita-

---

tion claim because such complaints are not a protected activity. Thus, it is entirely unclear from the pleadings *why* plaintiff could claim retaliation and *what* actions of the defendants constituted retaliatory conduct. Consequently, it seems quite clear that plaintiff has not sufficiently stated a retaliation claim. *See, e.g., Clement v. Motta,* 1992 WL 471770 at *5, 1991 U.S.Dist. LEXIS 19698 at *2 (W.D.Mich.1991) ("The complaint does not indicate what act (or acts) form the basis of the claim of retaliation, nor does it indicate which defendants are alleged to have retaliated against [plaintiff], nor does it indicate when this alleged retaliation took place.... Accordingly, ... [plaintiff] has not in his complaint provided the factual basis for his claim of retaliation.")

Even if Ms. Kauffman had stated a retaliation claim, such allegations would be insufficient at this stage of the proceedings. On its face, Rule 56 dictates that a non-moving party "may not rest upon the mere allegations or denials of the ... pleadings." Fed.R.Civ.P. 56(e) Plaintiff's brief in response to the instant motion and the proof attached thereto contain no reference to any claim of retaliation. Indeed, there is neither proof nor allegations which could satisfy even the most basic requirements of a *prima facie* case of retaliation. *See, e.g., Kolb v. State of Ohio Dep't of Mental Retardation and Development,* 721 F.Supp. 885, 898 (N.D.Ohio 1989) (Krenzler, J.,) (Title VII case). Plaintiff's only inferential proof on this point is her affidavit stating her belief that she was transferred "as punishment for my previous complaints in the physical plant". (Kauffman Aff. at ¶ 6) Again, there is no indication what the nature of her previous complaints are, and there is no indication that there is a causal link between any complaint and the transfer at issue. This court must, of course, presume that such allegations cannot be made and that such proof does not exist. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (*citing Frito–Lay Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). In light of such circumstances, this court simply cannot consider the instant action as one involving retaliation.

tion omitted) There is clearly no *genuine* issue that the plaintiff's lateral transfer did not constitute a constructive discharge and was thus not an adverse employment action as contemplated by the ADEA. Even if this court was not favored with the Circuit's and district court's *Darnell* opinions, this court would be quite reticent, as a matter of law, to hold that a lateral transfer to a position that the plaintiff enjoys could constitute an "adverse employment action". Summary judgment on this claim is appropriate.

## ii. Promotion

■ In their motion, defendants assert that plaintiff's failure to receive the disputed promotion was not an adverse employment action and that she was not qualified to receive the promotion at issue because she lacked supervisory experience and sufficient typing skills. The defendant's first contention, that a failure to promote was not an adverse employment action, is misguided and has been apparently abandoned in their response to plaintiff's reply brief. (Defendants' Reply Brief, Docket # 52 at 4) ("Plaintiff correctly points out that an employer's decision not to promote an employee because of her age might be actionable under the ADEA.") In light of this stance, the court shall do no more than note that it is quite clear that a failure to promote someone because of their age is considered an adverse employment action under the ADEA. *See, e.g., Parnell v. Stone,* 793 F.Supp. 742 (E.D.Mich.1992). With this established, we now turn to the other challenged element of plaintiff's *prima facie* case, her qualification for the denied promotion.

■ As noted above, defendants dispute plaintiff's qualification for the Office Manager position. The basis of this dispute is plaintiff's purported lack of sufficient typing skills and her "lack of supervisory experience during her tenure as Clerk II in the central office of the Department of Physical Plant Services." (Defendants' Motion, Docket # 43 at 17–18) The plaintiff has undoubtedly made a response sufficient to preclude summary judgment on this issue. On this point, the court need do no more than quote from plaintiff's response to the defendant's motion:

Regarding the Plaintiff's typing skills, the record contains evidence that the Plaintiff was an acceptable typist who was responsible for typing departmental work orders, *Deposition of Virginia Kauffman (Kauffman Deposition)* at p. 20 (Exh. 1, attached), and the inner departmental billing. *Kauffman Deposition* at p. 21. Moreover, once Defendant Methan (sic?) assumed the position of Office Manager, the Plaintiff's typing duties were expanded to include typing the departmental work purchase requisitions. *Kauffman Deposition* at p. 19; 46. Under these circumstances, *it simply strains credulity for the Defendants to belittle the Plaintiff's typing skills while simultaneously expanding the Plaintiff's typing duties.* The record also contains evidence that the Plaintiff was assigned to perform several of the Office Manager functions while the Office Manager was on vacation or extended leave. *Deposition of Chester Williams (Williams Deposition)* at p. 18 (Exh. 2, attached).

Regarding the Plaintiff's lack of supervisory experience, the Defendants cannot now contend that prior supervisory experience in the Department of Physical Plant Services was a prerequisite for the position of Office Manager because the person who actually received the position (Defendant Methan) also had no prior supervisory experience during her tenure in that department. *Williams Deposition* at p. 39–40.

(Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket # 45 at 8) (emphasis added) On the basis of this testimony, this court cannot conclude that there is no genuine issue that plaintiff was not qualified for the Office Manager position. We now turn to plaintiff's proof that the legitimate business reason advanced by the defendant in support of its decision is a pretext for the true cause of its decision, age discrimination.

## C. Legitimate Non–Discriminatory Explanation and its Rebuttal

■ Plaintiff's putative ability to establish a *prima facie* case does not, of course, preclude summary judgment in favor of the University. As the Sixth Circuit has stated:

[I]t is clear that merely making out a *prima facie* case does not automatically save appellant from a summary judgment motion. "Indeed, the inference of discrimination created by the *prima facie* case is dispelled once the employer's reason is stated, until and unless the latter is shown to be a pretext." *Menard v. First Securities Serv. Corp.*, 848 F.2d 281, 287 (1st Cir.1988) (quoting *Dea v. Look*, 810 F.2d 12, 15–16 (1st Cir.1987) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1015 (1st Cir.1979)). "Unless the plaintiff introduces counter-affidavits and argumentation that demonstrate that there is reason to disbelieve this particular explanation, there is no genuine issue of material fact." *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3rd Cir.1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989); *accord Boddy v. Dean*, 821 F.2d 346, 348–49 (6th Cir.1987); *compare Steckl v. Motorola, Inc.*, 703 F.2d 392, 393–94 (9th Cir.1983).

*Gagne*, 881 F.2d at 314. In other words, once the defendant has offered evidence of a legitimate business reasons for making its decision, the plaintiff must produce evidence that her age was a factor in the decision not to promote her and that "but for" this factor she would have been promoted. *Gagne*, 881 F.2d at 314.

■ Plaintiff was hired by the University, and Mr. Williams specifically, in 1979, when she was 50 years old. (Kauffman Depo. at 7) At the time, "he remarked that a lot of—sometimes the older women were better than the younger ones. In other words, we had to work and was more felt we would stay there longer...." (sic) (*Id.* at 8) In 1982, plaintiff was promoted to Clerk II when she was age 54. (Kauffman Depo. at 23–13) The office manager position, the post in dispute here, was held by Virginia Eustice from approximately 1981 until her retirement in 1989. (Kauffman Depo. at 13) At that point, her replacement obviously became an issue.

In the case at bar, the defendant contends that Ms. Metham, who received the promotion "was the best ... qualified employee for the Office Manager Position." (Defen-dants' Reply Concerning Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket # 52 at 6) Mr. Williams, the director of the Physical Plant, obtained, from the University Affirmative Action office, waiver from the general requirement that open positions be posted. (Williams Aff. at ¶¶ 5–6; Defendants' Exhibits B and I) This waiver was in accordance with the University's policy of promoting from within when possible. (*See* Defendants' Exhibit A: "there are occasions when efficiency, productivity and fairness can best be served by promoting a staff member into a vacant position ... Therefore, any department head who wishes to fill a position internally, within his/her specific unit and to waive the usual job communication policy may file such a request with his/her administrative officer and with the office of affirmative action....") Mr. Williams testified:

I have always tried to promote from within my own department is the first step. My record will prove that.

Q: Well, is that personal or is that policy?

A: It is both.

.     .     .     .     .

So I looked within my own department, first of all, my own office area, first of all. Ann Metham was the only person in that office that had the qualifications to meet the job that needed to be done and that's the sole basis for her promotion.

(Williams Depo. at 31–32). Mr. Williams was not the only person to come to this conclusion. Raymond L. Borom, director of the University's Affirmative Action Office, while considering the granting of the waiver of the posting request, appraised the qualifications of the existing employees in the Central Office of the Department of Physical Services and determined that Kauffman was not qualified for the promotion. (Borom Depo. at 87) When asked to elaborate on the comparison in qualifications for the promotion, Borom testified:

Well, we looked at the skill levels of each individual. I believe Ms. Kauffman was a clerk at the time. Ms. Metham was I believe a clerical specialist. The positions are higher and Ms. Metham had also

passed the typist test by the university, Ms. Kauffman had not. Now, if a person's going to become office manager, they would obviously have to possess a higher level of skill than the people who would be working under you. It would be virtually impossible to manage an office force, be it small secretarial staff or not, and have people beneath who in a sense possess skills which you did not and at some point in time later you're trying to direct them and you could not effectively direct them.

(Borom Depo. at 90–91) Ms. Metham was hired in September 1989. It suffices to say that defendant has successfully articulated a legitimate non-discriminatory business justification for its promotion practices. In light of this fact, "any presumption of discrimination drops from the case, and the burden of persuasion rests squarely on the plaintiff." *Wilson v. Firestone,* 932 F.2d 510, 514 (6th Cir.1991).

In an attempt to prove that the defendant's justification is unworthy of credence, the plaintiff states:

Defendant Williams' proffered explanation is rebutted, however, by the affidavit of Janice Burke, in which Ms. Burke alleges (1) that the Defendant viewed that Plaintiff as an old woman who was resistant to change, (2) that the Defendants told Burke to stay away from the older woman, and (3) that Defendant Williams intended to take steps to resolve the "situation" in the very near future. *Affidavit of Janice Burke (Burke Affidavit )* at p. 1–2 (Exh. 3, attache). Defendant Williams' explanation is also rebutted by the affidavit of Darla Spellman, in which Ms. Spellman asserts (1) that Defendant Williams also told Williams not to associate with the Plaintiff, and (2) that Defendant Williams appeared to believe that the Plaintiff was too old to learn how to use the computer *Affidavit of Darla Spellman (Spellman Affidavit )* at p. 1–2 (Exh. 4, attached).

(Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket # 45 at 10) The affidavits, in pertinent part, read as follows:

1. I began employment with Kent State University on January 29, 1990.

2. I further state that during my final interview with Chet Williams, Ann Metham, and Don Lumley, I was advised by them that "the older lady in the Department was resistive to change", and that this "older woman's" friend had been in Ann's position before Ann and this woman seemed resentful of that fact.

3. That I was advised by Ann Metham to stay away from the older lady, who they late identified as Ginny Kauffman.

4. That I was further advised in my interview that restructuring of the Department was forthcoming.

5. I further state that in a meeting with Ann Metham the early part of May (per my request) to discuss the conflict between her and Ginny, Ann informed me that Mr. Williams was taking steps to resolve the situation and that things would be much better in the very near future.

6. I was further advised to keep my distance from Mrs. Kauffman.

7. I further state that after I commenced work, I was able to observe the treatment of Mrs. Kauffman by Ann Metham. Ann Metham was extremely rude to Ginny Kauffman. She never spoke to her in a decent tone of voice. She was always very abrupt, cold, and always demeaned Mrs. Kauffman. Ms. Metham was abrupt, sharp and consistently rolled her eyes at Mrs. Kauffman, and made negative comments about her on a continual basis.

8. I further state that I approached Ms. Metham about her treatment of Mrs. Kauffman, and I was advised that I should "stay the hell away from her". I was further advised that "Mr. Williams is going to take care of the situation."

(Burke Aff.) Ms. Spellman testifies to the following:

3. I ... state that after I was hired, I was advised by Mr. Chet Williams to not go to Ginny Kauffman and ask any questions or ask for any help; and further, to stay away from her.

4. I further state that I requested an opportunity to train Ms. Kauffman on the computer; however I was advised by Ms. Metham and Chet Williams that I was not

to allow her to receive training on the computer. The impression that Chet Williams and Ms. Metham gave me was that they felt that Ginny Kauffman was too old to learn the computer.

5. I further state that once Ms. Metham became aware that I was a friend of Ginny Kauffman, she began to treat me coldly.

6. I further state that Ms. Metham treated Ginny Kauffman worst (sic) than anyone else in the office.... In my observations of the way Ms. Metham and Mr. Williams treated Ginny Kauffman, I feel that her age was a factor in her treatment.

(Spellman Aff.)

The court first notes that there exist grave questions as to the admissibility of Ms. Spellman's testimony. *See* Fed.R.Civ.P. 56(e). In addition, it must be noted that the probative value of Ms. Burke's testimony, on matters occurring *months after* the promotion decision was made, is also clearly drawn into question. Regardless of these difficulties, it is quite clear that no genuine issue exists on this matter. Plaintiff's evidence, viewed in a light most favorable to her illustrates that she was disliked, that she was treated discourteously, that she was referred to *after the promotion* as an "old lady", and that one co-worker subjectively believed her age was a factor in defendants' discourteous treatment of her. This "proof" of age discrimination is simply insufficient for any reasonable fact-finder to conclude that the defendant's business justification is untrue and that plaintiff would have received the promotion if it were not for her age. *Gagne,* 881 F.2d at 314. As noted by our Circuit court:

Such comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.

*Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 n. 2 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). When "[s]everal of [plaintiff's] co-workers state[ ] in depositions that the midnight shift is disfavored among [defendant's] employees, and two of those co-workers state[ ] that they believed assignments were made because of age":

the evidence proffered by plaintiff ... [is] insufficient to withstand a motion for summary judgment ... A jury could not have found for plaintiff on the basis of the evidence presented. Summary judgment, therefore, should have been granted on the age discrimination claim.

*O'Shea v. Detroit News,* 887 F.2d 683, 688 (6th Cir.1989), *reh'g denied* (en banc). The Supreme Court has succinctly stated that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' ". *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This court must conclude that this is such a case. Defendant's motion on this claim must be granted.

### IV. Conclusion

There is no genuine issue that the individual defendants are not "employers" for purposes of the ADEA, that plaintiff was not subjected to an "adverse employment action" by her transfer, and that age was not a factor in the decision to promote a younger person rather than plaintiff. Accordingly, defendants' motion for summary judgment, Docket # 43, is GRANTED. This case is terminated in its entirety.

IT IS SO ORDERED.