Melinda SEELY, Plaintiff,

v.

Marvin G. RUNYON, Post Master
General, United States Postal
Service, Defendant.

Civil No. 2:95–cv–279W.

United States District Court,
D. Utah,
Central Division.

May 28, 1997.

Linda D. Smith, Salt Lake City, UT, for Plaintiff.

Jeannette F. Swent, Asst. U.S. Atty., Salt Lake City, UT, Melinda Varszegi, Law Dept., U.S. Postal Service, Salt Lake City, UT, for Defendant.

*MEMORANDUM DECISION AND OR-DER GRANTING DEFENDANT'S MO-TION FOR SUMMARY JUDGMENT*

WINDER, Chief Judge.

This matter is before the court on Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(b). The court held a hearing on the motion on May 9, 1997. At the hearing, Jeannette F. Swent and Melinda Varszegi represented Defendant Marvin G. Runyon, and Linda D. Smith represented Plaintiff Melinda Seely. Before the hearing, the court considered carefully the pleadings, memoranda, and other materials submitted by the parties. The court had also read certain of the authorities cited by each of the parties. Following oral argument, and after taking the motion under advisement, the court has further considered the relevant law and facts. Having now fully considered the issues in this case, and good cause appearing, the court enters the following memorandum decision and order.

## I. BACKGROUND

For purposes of this motion for summary judgment, the court considers the following statement of facts to be true.

Plaintiff, an employee of the United States Postal Service since 1965, assumed the position of a Level–20 Postmaster in Magna, Utah, on March 12, 1990. Upon assuming that position, Plaintiff inherited a number of problems which she worked to solve. In particular, Plaintiff believed the office had a problem with mail volume inflation which she reported to management and attempted to correct.

In May 1991, Plaintiff met with Ken Prentiss ("Prentiss"), Salt Lake City Management Sectional Center ("MSC") Manager. During that meeting, Plaintiff attempted to describe the problems she had encountered at the Magna Post Office since her arrival, including her concerns with mail volume inflation. In response, Prentiss told Plaintiff that "two unsatisfactories and you're removed from your office," and that she needed to "go back and count each piece of mail in her office." Plaintiff was shocked by Prentiss' statement, especially in light of the fact that she had received a "very good" evaluation for her performance in Magna during fiscal year 1990.

Following that May 1991 meeting, Plaintiff was subjected to threats of removal and interference by the MSC in the management of the Magna Post Office. Plaintiff also claims she was subject to harassment and intimidation. Moreover, in the summer of 1992, David Misner ("Misner"), Director of Field Operations for the Salt Lake City MSC, removed Plaintiff from the Magna Post Office and sent her on a ninety-day training assignment in other area post offices.

During her temporary reassignment, Plaintiff spent almost two months with Bill Davis ("Davis") in the Sandy Post Office. The Sandy Post Office is a level 22 post office which is substantially more complex than the Magna Post Office. While in Sandy, Plaintiff did a lot of problem solving and provided Davis with a great deal of assistance, but also performed odd-jobs, beneath her Level EAS–20 ranking.[1]

Following her stay in Sandy, Misner refused Plaintiff's request to send her back to Magna and instead told Plaintiff to report to Bob Johnson ("Johnson"), the Postmaster in the Ogden Post Office. The Ogden Post Office is a Level 22 or 24 post office, and compared to the Magna Post Office, is much more complex. Plaintiff only spent one day in Ogden where Johnson gave her the choice of taking an assignment with work below her Level EAS–20 ranking or telling Misner that she refused to perform the assignment.

Plaintiff chose to take an assignment in the Ben Lomand Station. The Ben Lomand Station was a Level 18 station, several times bigger than the Magna Post Office, and fifty-two miles away from Plaintiff's home. Plaintiff chose to work in Ben Lomand where she was given a mixture of supervisor and postmaster responsibilities, including the ultimate responsibility of managing the office. Plaintiff spent less than two weeks in Ben Lomand, and on October 2, 1992, approximately three weeks before her ninety-day training assignment was to end, Plaintiff opted for an "early out" retirement. Plaintiff stated that she believed that if she had stayed in Ben Lomand for the remaining thirty days, she would have been sent back to the Magna Post Office.

During the temporary reassignment, and up until her retirement, Plaintiff retained her title as Postmaster, Magna Post Office. Moreover Plaintiff's salary and benefits were always based on that job title.

Plaintiff filed this lawsuit on March 27, 1995, and amended her complaint on December 4, 1995. Plaintiff's lawsuit consists of three causes of action: (1) a Title VII gender discrimination claim; (2) a Title VII religious discrimination claim; and (3) an Age Discrimination in Employment Act ("ADEA") claim. On March 21, 1997, Defendant moved for summary judgment on all three claims, arguing that Plaintiff's causes of action fail because she did not suffer any adverse employment action. In opposition to Defendant's motion for summary judgment, Plaintiff claims that she was subjected to adverse employment actions and that questions of fact preclude the relief requested by Defendant. The court will consider the parties' arguments below.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1552 (10th Cir.1997).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)); *see also Gonzales v. Millers Cas. Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991).[2] The non-moving party must "make a showing sufficient to establish the

---

1. Plaintiff often performed work beneath her Level EAS–20 ranking while working as the Postmaster in the Magna Post Office. For example, Plaintiff sorted mail and cleaned the toilets.

2. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Moya v. United States,* 35 F.3d 501, 502–04 (10th Cir.1994).[3] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D. Utah R. 202(b)(4).

## III. *DISCUSSION*

■ Plaintiff claims that Defendant discriminated against her on the basis of gender and religion in violation of Title VII,[4] and on the basis of age in violation of the ADEA.[5] To prevail on her claims, Plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination.[6] *See Thomas v. International Bus. Machs.,* 48 F.3d 478, 484 (10th Cir.1995).

■ To establish a prima facie case for Title VII gender discrimination, Plaintiff must prove (1) she is within a protected class, (2) adverse employment action was taken against her, (3) she was doing satisfactory work at the time the adverse employment action was taken, and (4) comparable employees, not in the protected category, were not subject to comparable adverse employment action. *See Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174–75 (10th Cir.1996); *Cole v. Ruidoso Mun. Schs.,* 43 F.3d 1373, 1380 (10th Cir.1994). Similarly, to establish a prima facie case for Title VII religious discrimination, Plaintiff must show (1) she was subject to adverse employment action, (2) she was doing satisfactory work at the time the adverse action was taken against her, and (3) some additional evidence to support her claim that Defendant took adverse action against her because Plaintiff did not share the religious beliefs of her supervisors. *See Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1038 (10th Cir.1993). Finally, to state a prima facie case for age discrimination under the ADEA, Plaintiff must show (1) she is within a protected class, (2) adverse employment action was taken against her, (3) she was doing satisfactory work at the time the adverse employment action was taken, and (4) that a comparable employee who received more favorable treatment was substantially younger than Plaintiff. *See O'Connor v. Consolidated Coin Caterers Corp.,* — U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *MacDonald,* 94 F.3d at 1441; *Thomas,* 48 F.3d at 484–85.

The element common to all three cases is "adverse employment action." While Plaintiff must prove all of the above elements to

---

3. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

4. Title VII makes it unlawful for an employer to "discriminate against any individual ... with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).

5. The ADEA makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

6. There are actually two methods for proving a defendant held the requisite discriminatory intent to violate Title VII or the ADEA. One, a plaintiff may present circumstantial evidence that indirectly proves the defendant's discriminatory motive in taking the adverse employment action. When a plaintiff chooses to indirectly prove the discriminatory motive, courts apply the burden-shifting analytical framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Mac-Donald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1441 (10th Cir.1996); *Thomas,* 48 F.3d at 484. The *McDonnell Douglas* framework requires a plaintiff to initially establish a prima facie case of discrimination.

The alternative method for proving discriminatory intent is to present direct proof of that intent. In this case, Plaintiff has not presented such proof in response to Defendant's motion for summary judgment; therefore, the court will analyze Plaintiff's claims under the *McDonnell Douglas* framework as described above.

ultimately succeed on her claims, the only issue now before the court is whether a reasonable jury could find that Plaintiff has suffered an adverse employment action.[7]

In evaluating Title VII and ADEA discrimination claims, courts have made it clear that " 'not everything that makes an employee unhappy is an actionable adverse action.' " *Jeffries v. Kansas, Dep't of Social & Rehabilitation Servs.*, 946 F.Supp. 1556, 1567 (D.Kan.1996) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)); *see also Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.1997); *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 273– 74 (7th Cir.1996); *Cole*, 43 F.3d at 1381; *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). Instead, an actionable adverse action is one that affects the " 'terms, privileges, duration, or conditions of employment.' " *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir.1996) (quoting *Johnson v. Frank*, 828 F.Supp. 1143, 1153 (S.D.N.Y. 1993)); *see also* 29 U.S.C. § 623(a)(1) (making it unlawful to discriminate with respect to "compensation, terms, conditions, or privileges of employment"); 42 U.S.C. § 2000e– 2(a)(1) (same). Plaintiff alleges that Defendant took a number of adverse employment actions against her. Specifically, Plaintiff complains of threats of removal, harassment, intimidation, interference with her management of the Magna Post Office, and ultimately reassignment from the Magna office for ninety days for training in other offices. The court finds, for the reasons articulated below, that even viewing the facts in the light most favorable to Plaintiff, no reasonable jury could conclude that Defendant's actions constitute actionable adverse employment actions under Title VII or the ADEA.

First, Defendant's threats of removal are not adverse employment actions because of their lack of consequence. In *Mattern v. Eastman Kodak*, the Fifth Circuit stated that the verbal threat of being fired is not an "ultimate employment decision" and does not "rise above having a mere tangential effect

on a possible future employment decision." 104 F.3d at 708. The Fifth Circuit reasoned that "[t]o hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which *might* jeopardize employment in the future." *Id.* (emphasis in original). This court agrees with the Fifth Circuit that based on the language found in Title VII and the ADEA, such expansion is unwarranted. *See also Cole*, 43 F.3d at 1381 (finding no adverse employment action where principal only stated that he would evaluate the plaintiff three times a year but did not carry the "threat" out).

Second, like threats of removal, a reasonable jury could not find that the actions Plaintiff characterizes as "harassment," "intimidation," and "interference" constitute actionable adverse employment action under Title VII or the ADEA. To defeat Defendant's motion for summary judgment, Plaintiff must demonstrate a material adverse change in the terms or conditions of her employment. Plaintiff has failed to satisfy her burden. While Plaintiff cites to a number of instances where she felt "threatened," "embarrassed," or "humiliated," by Defendant's actions, Plaintiff has failed to demonstrate how such actions effectuated a material change in the terms or conditions of her employment. Moreover, while the actions Plaintiff complains of as "interference" may have a tangential effect on her employment, they do not rise to the level of ultimate employment decisions meant to be actionable under Title VII or the ADEA. *See, e.g., Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995) (affirming grant of summary judgment in favor of employer after finding the plaintiff's administrative complaints did not rise to the level of ultimate employment decisions); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir.1994) (holding a semantic change in title and a "bruised ego" did not constitute adverse employment action where pay and

---

**7.** It should be emphasized that Defendant has sought summary judgment on only one basis: that Plaintiff has not suffered an adverse employment action. Thus, the court will not consider

whether a reasonable jury could find that Plaintiff has established the remaining elements of her prima facie case.

benefits remained the same); *Spring v. Sheboygan Area Sch. Dist.,* 865 F.2d 883, 886 (7th Cir.1989) (finding "public humiliation" is not sufficient to establish age discrimination because "public perceptions were not a term or condition of [the plaintiff's] employment"); *Bullock v. Widnall,* 953 F.Supp. 1461, 1473 (M.D.Ala.1996) (stating plaintiff failed to demonstrate adverse employment action where he was not selected to attend a training course because Plaintiff failed to demonstrate how the non-selection affected the terms or conditions of his employment); *Jeffries,* 946 F.Supp. at 1567 (stating that "a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities").

■ Finally, the court finds, as a matter of law, that Plaintiff's ninety-day training reassignment does not constitute adverse employment action. Courts have generally held that absent a materially adverse change in the terms and conditions of employment, a lateral transfer will not constitute an actionable "adverse employment action" for the purposes of Title VII or the ADEA. For example, in *Harlston v. McDonnell Douglas,* 37 F.3d 379, 382 (8th Cir.1994), the plaintiff was reassigned but suffered no diminution in her title, salary, or benefits. The substance of her complaint was that the job to which she was reassigned involved fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area. The Eighth Circuit concluded that "[c]hanges in duties or working conditions that cause no materially significant disadvantage, such as [the plaintiff's] reassignment, are insufficient to establish the adverse conduct required to make a prima facie case." *Id.* The court concluded that the reassignment described by the plaintiff showed "nothing 'more disruptive than a

mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

Likewise, in *Joiner v. Ohio Department of Transportation,* 949 F.Supp. 562, 566 (S.D.Ohio 1996), the plaintiff claimed that he experienced adverse employment action in that he lost the opportunity for overtime, was deprived of supervisory authority, and that his responsibilities were "significantly reduced." The court found that the fact that the plaintiff experienced some job changes was not enough to establish that he was subjected to adverse employment action. *Id.* at 566–67. The court thus granted summary judgment to the employer because the plaintiff had presented no evidence that his working conditions were objectively intolerable to a reasonable person or that he experienced a materially adverse change in the terms of his employment. *Id.* at 567.

In this case, Plaintiff claims that her ninety-day training reassignment constituted adverse employment action. The court does not agree. While Plaintiff was reassigned, her reassignment was only temporary,[8] she suffered no loss in salary or benefits, and she retained the same job title. Furthermore, Plaintiff was reassigned to train in offices which were more complex than the Magna office and while in those offices, she engaged in "problem solving" and in some postmaster duties. Moreover, even if Plaintiff performed some tasks below her Level EAS–20 ranking while in the Sandy and Ben Lomand offices, she often performed such tasks while working in the Magna Post Office; thus, there is no evidence that her job responsibilities were materially altered. Therefore, Plaintiff cannot survive Defendant's motion for summary judgment on her claim that the ninety-day reassignment was an adverse employment action. *See also Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 135–

---

**8.** Plaintiff claims that there is a question of fact regarding the temporal nature of this assignment, but she points to no evidence which implies that the reassignment was going to be extended. Without specific evidence, the court cannot find that a question of fact exists. *See Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1546 (10th Cir.1995) ("To withstand a motion for sum-

mary judgment, 'the nonmovant must do more than refer to allegations of counsel contained in a brief ...'").

Furthermore, Plaintiff testified that she thought she would have been returned to the Magna Post Office had she completed the assignment in Ben Lomand.

36 (7th Cir.1993) (affirming summary judgment in favor of employer in ADEA case where plaintiff was transferred and given different responsibilities, but did not show the responsibilities were any less significant); *Watts v. Kroger Co.,* 955 F.Supp. 674, 686–87 (N.D.Miss.1997) (finding plaintiff's allegation that she was assigned duties she was not normally asked to perform did not constitute adverse employment action as a matter of law); *Daulo v. Commonwealth Edison,* 938 F.Supp. 1388, 1397–98 (N.D.Ill.1996) ("[T]he court does not believe that a temporary shift transfer combined with a temporary retraining program—and nothing more-qualifies as adverse employment action."); *Caussade v. Brown,* 924 F.Supp. 693, 701 (D.Md.1996), *aff'd,* 107 F.3d 865 (4th Cir.1997) (granting employer's motion for summary judgment where plaintiff was transferred but did not suffer a material loss of prestige or a reduced opportunity for future reassignments or salary/grade increases); *Kauffman v. Kent State Univ.,* 815 F.Supp. 1077, 1083–86 (N.D.Ohio 1993), *aff'd,* 21 F.3d 428 (6th Cir. 1994) (granting employer's motion for summary judgment where plaintiff's transfer was not "objectively intolerable to a reasonable person" and thus did not amount to an adverse employment action); *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990), *aff'd,* 924 F.2d 1057 (6th Cir.1991) ("The clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.' ").

In sum, because Plaintiff has failed to establish that she suffered an adverse employment action, an essential element of her prima facie case of discrimination, her Title VII and ADEA claims must be dismissed.[9]

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED AS FOLLOWS:

**9.** In addition, Plaintiff claims in her memorandum in opposition to Defendant's motion for summary judgment, that her first amended complaint alleges facts sufficient to put Defendant on notice of causes of action in addition to the three explicitly enumerated. Specifically, Plaintiff claims that she has sufficiently alleged a cause of action for retaliation. However, even assuming such a claim has been properly alleged, such

1. Defendant's Motion for Summary Judgment is granted and Plaintiff's first amended complaint is dismissed with prejudice.

2. Plaintiff's request to amend her complaint to conform to the evidence is denied.

does not save Plaintiff's claim from being dismissed on summary judgment. To state a claim for retaliation under Title VII, Plaintiff must establish that she was that subject of an adverse employment action. As the foregoing makes clear, Plaintiff has failed to make such a showing. Accordingly, Plaintiff's assertion that she has a claim for retaliation does not save her lawsuit from dismissal on summary judgment.