42 F.3d 1388
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gladies M. HERRON, Plaintiff-Appellee,
v.
TENNESSEE BOARD OF REGENTS, et al., Defendant-Appellant.
 No. 93-6529.
 United States Court of Appeals, Sixth Circuit.
 Nov. 28, 1994.
 
 Before: MARTIN and BATCHELDER, Circuit Judges, and COHN, District Judge*.
 PER CURIAM.
 
 
 1
 Gladies M. Herron appeals the district court's grant of summary judgment in favor of the Tennessee Board of Regents and James R. Vaden, in her Title VII action alleging racial discrimination and retaliatory discharge. For the following reasons, we affirm the district court's decision to grant summary judgment.
 
 
 2
 Herron, an African-American, was employed by the Board of Regents as a financial management analyst from 1983 to 1991. In April 1989, Herron complained that her salary was inequitable compared to that paid another, comparable position. She requested a salary increase of between $10,000 and $17,000. No pay increase was forthcoming as a result. However, in July of that year, she was offered a promotion and salary increase. The salary offered was $37,000. Herron refused this offer, however, claiming that the published salary range was between $40,000 and $50,000. On the same day, Stephanie Faulkner, a white employee holding the same position as Herron, was also offered the same promotion for the identical salary and accepted. In June 1990, Herron was offered this promotion a second time, with yet a higher pay increase, but still refused to accept it.
 
 
 3
 Although she already held a Master's Degree in Business Administration, Herron decided to return to school in 1988, to enhance her career advancement opportunities. She enrolled in a part-time doctoral program at Vanderbilt University in higher education administration. As part of the settlement agreement reached in the case of Geier v. Alexander, 593 F.Supp. 1263 (M.D.Tenn.1984), to facilitate minority faculty development, Herron received grant-in-aid funds from the Board. In requesting these funds, Herron said she would notify the Board if she received any other sources of funding, so that the grant-in-aid funds might be reduced accordingly. The grant-in-aid funds were to be used for tuition, books, and fees, not supplies. In exchange for the funds, Herron was to continue to provide service to the Board for a specified time period or pay back the funds.
 
 
 4
 Herron received a departmental scholarship awarded by the George Peabody College of Vanderbilt University shortly after receiving approval for the grant-in-aid funds. It was a half-tuition minority scholarship awarded to Herron because of her "demonstrated financial need." In accepting the award, Herron agreed to notify her department if she received an additional award from outside sources. Such notification may have resulted in reducing her current award. For the academic years 1988 through 1991, Herron received both grant-in-aid funds as well as her Vanderbilt scholarship funds. She did so without informing either the Board or Vanderbilt about the other's funds. From these combined funds, she periodically withdrew amounts from her Vanderbilt student account. Part of this money was used to buy a sound system, amplified speakers, cassettes, and other educationally-related items.
 
 
 5
 In October 1990, Vanderbilt finally became aware of the dual receipt of funds and withdrawals from Herron's student account. Despite notices admonishing Herron that, by accepting the George Peabody College scholarship money, she had agreed to notify the department if she received an additional award from an outside source, Herron apparently never informed the department she was receiving grant-in-aid funds. Vanderbilt withdrew its scholarship and also notified the Board of Regents that Herron had been receiving it. Vaden, the Treasurer and Vice Chancellor of the Board, received a copy of a letter from the Dean of the George Peabody College. In this letter, the Dean outlined Herron's receipt of duplicate funds, her concealment of that fact, her failure to notify the department of the grant-in-aid funds, and her claim that those funds were not actually financial aid because they were received pursuant to a lawsuit still under review. Despite having signed a "Grant Agreement" to receive them, Herron stated that the grant-in-aid funds were "neither a scholarship, grant, loan, nor assistan[t]ship."
 
 
 6
 On April 19, 1991, the Board terminated Herron for breach of trust and instructed her to pay back the grant-in-aid funds she had received. In June 1992, Herron applied for a position with the Metropolitan Public Schools of Davidson County. With her consent, the school system requested recommendations from Herron's past employers, including the Board. The request asked if and why Herron had been terminated and whether the Board would re-employ her. In response, the Board verified her dates of employment and position, but refused to furnish more information because the Board and Herron were involved in litigation at the time.
 
 
 7
 This is the second of two discrimination lawsuits Herron filed based upon these facts. Initially, she filed suit in state court, but voluntarily dismissed that claim in October 1992. On December 30, 1992, Herron filed suit against the Board and Vaden in federal court. She alleged employment discrimination and retaliatory discharge. Specifically, she claimed she was discriminated against because of her race and that she was terminated in retaliation for requesting pay increases. She also claimed that the Board's response to her prospective employer was in retaliation for her filing an earlier state lawsuit. The Board and Vaden moved for dismissal or summary judgment, arguing that Herron's claims were barred by the applicable statute of limitations and that she could not rebut the legitimate, non-discriminatory reasons they offered for her discharge. On October 8, 1993, the district court granted their motion for summary judgment. This timely appeal followed.
 
 
 8
 Herron makes four arguments on appeal. First, she claims that summary judgment was precluded because the district court previously granted a motion to stay discovery. She argues next that her termination for breach of trust was merely pretextual. She also asserts that the findings of the Tennessee Department of Employment Security should have been given preclusive effect by the district court. Finally, she claims there is a genuine issue of material fact regarding her retaliatory discharge claim.
 
 
 9
 The district court's decision noted that "ample time for discovery ha[d] been allowed." Herron disputes this conclusion, claiming that the motion to stay discovery was the equivalent of issuing "a summary judgment sua sponte." She claims she was "blindsided" by the summary judgment and should be "afforded a fair opportunity to present her evidence."
 
 
 10
 Herron's second argument is that the Board's "breach of trust" rationale is merely pretextual and that her termination was really racially motivated. She maintains that the Board and Vaden "have never stated what the breach in trust was." She points to evidence of Vanderbilt's receiving the grant-in-aid funds (receipts for tuition, etc.) and equates that with notice to her department of the additional funds. She further claims that the money was not financial aid, but somehow became part of her employment contract because she agreed to continue to provide services to the Board.
 
 
 11
 Third, Herron claims that the Tennessee Department of Employment Security's finding that she had "no intent to receive duplicate financial aid for the same expenses," should be given res judicata effect in this litigation. She claims that the Board should now be estopped from claiming intentional work-related misconduct.
 
 
 12
 Finally, Herron asserts she received disparate treatment and that this was racially motivated. She says the Board has still not defined "breach of trust." She argues that when refusing the promotions offered to her, she did not mention racial discrimination because she believed at that time that the Board was an equal opportunity employer. She claims the Board never offered an explanation as to why she was treated differently than other, white employees. She then relies on the "continuing violation" doctrine to maintain that her claims of salary and promotion discrimination are not time-barred. However, she offers no explanation as to how this affects a decision to dismiss a cause of action on the merits.
 
 
 13
 The Board and Vaden respond by claiming: that the district court acted within its discretion in granting the stay of discovery; that they did not discriminate regarding Herron's salary or promotions; that her termination was not retaliation; and, that the findings of the state agency are not preclusive here.
 
 
 14
 The Board notes first that Herron did not oppose their motion to stay discovery. Relying upon local rules, they equate her failure to file a response with not opposing the motion. They claim that Herron disregarded all opportunities to conduct discovery. In response to its summary judgment motion, she filed no motion under Rule 56(f) of the Federal Rules of Civil Procedure asking for a continuance. Instead, her response provided no compelling reason to justify a continuance and set out no specific reasons demonstrating the need for further discovery. The issue involved was whether the Board's legitimate, non-discriminatory reason for her discharge was pretextual. Although she requested permission to depose people at Vanderbilt concerning her dual receipt of funds, Herron never asked to depose anyone involved with the decision to discharge her.
 
 
 15
 In response to Herron's claim that no explanation was offered as to why she was treated differently than white employees, the Board maintains she never established that she was treated differently. Herron says the issue is a question of the Board's intent regarding her allegedly disparate treatment, and therefore summary judgment is inappropriate. But, the Board notes that Herron did not present any evidence of unlawful motive to create an issue for trial. The Board points to language from a decision of this Court in a breach of employment contract case: "Ordinarily, a jury question is presented when there is a dispute as to the 'true reason' for discharging an employee. However, to reach the jury, ... the employee [must] present 'evidence that [she] was really discharged for another reason." Pachla v. Saunders Sys., Inc., 899 F.2d 496, 499 (6th Cir.1990) (quoting Toussaint v. Blue Cross & Blue Shield, 292 N.W.2d 880 (Mich.1980)). The Board argues that merely asserting that this is so is not the same as presenting evidence.
 
 
 16
 Next, the Board addresses Herron's claim of retaliatory discharge.
 
 
 17
 To establish a prima facie claim of retaliatory discharge, plaintiff must establish: (1) that [she] engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) that [she] was subject to adverse employment action subsequent to or contemporaneous with [her] protected activity; (3) there is a causal connection between the protected activity and the adverse employment action.
 
 
 18
 Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co., 783 F.2d 50, 54 (6th Cir.), cert. denied, 478 U.S. 1006 (1986). Here, the Board argues Herron did not engage in any protected conduct; she had not participated in any Title VII proceeding and did not oppose any discrimination at the time. Indeed, she did not accuse the Board of any racial discrimination until after she had been discharged. The Board maintains that Herron has failed to make out a prima facie claim. Instead, the Board has offered a legitimate, non-discriminatory reason for Herron's discharge: her "questionable and fraudulent financial dealings."
 
 
 19
 Last, the Board addresses Herron's claim that Tennessee Department of Employment Security's findings should be given res judicata effect. Herron's reliance on Elliott v. University of Tennessee, 478 U.S. 788 (1986), is misplaced. Unemployment compensation hearings differ substantially from discrimination cases, particularly as to the allocation of the burden of proof. In Title VII cases such as this one, plaintiff carries the ultimate burden of proving racial discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the plaintiff has proved her prima facie case of racial discrimination under McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken against plaintiff. The plaintiff then has an opportunity to prove that the "legitimate" reasons were mere pretext. Burdine, 450 U.S. at 253. But, the ultimate burden of persuasion remains with the plaintiff at all times. Id. at 252. This is not the case in unemployment compensation claims where all that must be proven is employment and discharge.
 
 
 20
 This Court reviews a grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this burden is met, it shifts to the non-moving party, who cannot rest on her pleadings, but must present some "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The existence of a mere scintilla of evidence in support of the non-moving party's position will not suffice to defeat summary judgment. Id. at 252. Finally, all evidence is viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 21
 Upon review, we affirm the judgment of the district court. In granting the Board's motion for summary judgment, the district court stated:
 
 
 22
 To avoid summary judgment on an employment discrimination claim, a plaintiff may not rest on the fact that she is African-American and was terminated. To make out a retaliatory discharge claim, a plaintiff may not rest on the temporal sequence of noise-making followed by termination, especially when there is a significant intervening event that may alone justify the termination and when there is no evidence that the "noise-making" in question was perceived as threatening or problematic by the employer. In short, some concrete, affirmative proof of discriminatory or retaliatory intent or effect must be offered to establish a prima facie employment discrimination case, not to mention to rebut an employer's legitimate, nondiscriminatory reason for its actions. See Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309 (6th Cir.1989). Plaintiff does no more than assert that her firing for breach of trust--an imminently [sic] reasonable ground for such firing given the plaintiff's financially-sensitive employment position--was pretextual and that the real reason was racist and retaliatory.
 
 
 23
 We agree with this assessment. Herron was a public official whose job duties included conducting audits of state colleges and universities. In receiving dual funds for the same expenses to attend school, she engaged in dishonest and arguably fraudulent financial conduct involving state funds. Even on appeal, Herron does no more than make conclusory assertions as to the true reason behind her discharge. Herron has put forth no credible evidence to sustain her claim of discrimination and retaliation or to rebut the Board's legitimate, non-discriminatory rationale.
 
 
 24
 The decision of the district court granting summary judgment in favor of Vaden and the Tennessee Board of Regents is therefore AFFIRMED.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation