**William H. JOINER, Plaintiff,**

v.

**OHIO DEP'T OF TRANSPORTATION, Defendant.**

**No. C–1–95–291.**

United States District Court, S.D. Ohio, Western Division.

Dec. 19, 1996.

---

Jeffrey Michael Silverstein, Jeffrey M. Silverstein & Associates—3, Dayton, OH, for plaintiff.

Donald Michael Collins, Mary Beth Foley, Noelle T. Tsevdos, Ohio Attorney General—2, Columbus, OH, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. # 10). For reasons set forth below, the Defendant's Motion is hereby **GRANTED.**

## I.

### A. Undisputed Facts and Procedural History

The Plaintiff, William Joiner, a black male, was employed by the Ohio Department of Transportation, ("ODOT") until his retirement on June 30, 1995. The Plaintiff was employed by ODOT during the period March 1978 until June 30, 1995, in Hamilton County. The Plaintiff held a number of different positions throughout his tenure including the position of County Superintendent during the period 1984 through 1992. The position of County Superintendent required the Plaintiff to manage all employees working at the Hamilton County Garage.

The Plaintiff has made a claim of race discrimination and retaliation under Title VII relating to his transfer from the position of County Superintendent to Highway Maintenance Superintendent on December 7, 1992. The transfer was precipitated by allegations against the Plaintiff by his subordinates relating to his management of them. These complaints were received by Gary Ketron, who was appointed to the position of District Deputy Director for District # 8 during February 1991.

Upon assuming his position, Gary Ketron began receiving complaints regarding the Plaintiff. No action was taken against the Plaintiff based upon these initial complaints. On June 2, 1992, Gary Ketron and the Cincinnati Police were called to the Hamilton County Garage based upon a reported dispute between the Plaintiff and one of his subordinates, Karen Handley.

During October, 1992, Gary Ketron retained Dr. Charles Martin to conduct a work environment study at the Hamilton County Garage. Gary Ketron had previously retained a private consultant to evaluate another supervisor (who was white) working in District # 8. Dr. Martin interviewed employees working at the Hamilton County Garage, along with employees working at three other outposts falling within the Plaintiff's supervision in Hamilton County.

On October 31, 1992, Dr. Martin issued a written report and findings to Gary Ketron based upon his work environment study of

Hamilton County Operations. Dr. Martin detailed complaints against the Plaintiff by employees working in the Hamilton County Garage and recommended that the Plaintiff be transferred from the position of County Superintendent in an effort to alleviate these reported problems.

Gary Ketron and Dr. Martin subsequently advised the Plaintiff of the findings of Dr. Martin's report on November 20, 1992. The Plaintiff was transferred from the position of County Superintendent to Highway Maintenance Superintendent on December 7, 1992. The Plaintiff's pay and benefits remained constant despite the change in position. The first person to replace the Plaintiff was a black male.

Beginning February 26, 1993, the Plaintiff took an extended disability leave through July 11, 1994. The Plaintiff returned to work on July 12, 1994, and voluntarily retired with full pay and benefits from the position of Highway Maintenance Superintendent on June 30, 1995.

The Plaintiff, prior to the bringing of this suit, had previously filed three charges of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunities Commission ("EEOC") against the Defendant alleging race discrimination and retaliation. One such complaint, the basis of this action, was filed on December 9, 1992, and a Right to Sue letter was issued by the EEOC on January 20, 1995. The Plaintiff seeks damages for race discrimination and retaliation in violation of Title VII and requests reinstatement, compensatory damages, punitive damages, and attorneys fees and expenses.

## B. Disputed Facts

The Plaintiff claims he was qualified for the position of County Superintendent, and the Defendants maintain the Plaintiff was not qualified.

The parties are in dispute as to whether the Plaintiff voluntarily agreed to the transfer and change in position on November 20, 1992.

The Plaintiff claims that the decision to request Dr. Martin to perform a work envi-ronment study and the decision to transfer him was discriminatory and/or in retaliation for prior charges of discrimination filed in 1986. The parties are in dispute as to whether Gary Ketron had knowledge of the 1986 complaint filed by the Plaintiff.

The parties are in dispute as to whether the Defendant deviated from its customary procedure for addressing unsatisfactory performance by an employee.

## II.

### A. Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party may not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1478 (6th Cir.1989). ("In other words, the movant could challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery, . . . if the [nonmoving party] did not 'put up,' summary judgment [is] proper.")

### B. Established Framework for Employment Discrimination Cases

Under the established framework for deciding employment discrimination cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), a plaintiff establishes a prima facie case by proving several elements of his or her claim. Here, the plaintiff alleges both race discrimination and retaliation under Title VII, and while the framework is the same for both race discrimination and retaliation claims under Title VII, *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987), the elements establishing the prima facie case are different for each claim. The elements necessary to establish a prima facie case for each of the plaintiff's claims are set forth in more detail below; however, one element that is common to both of the plaintiff's claims is that the plaintiff must have been subjected to adverse employment action.

Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action taken against the plaintiff. *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir.1996) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

If the defendant carries the burden of production by articulating a legitimate, non-discriminatory reason, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but were merely pretext for illegal discrimination. *Kocsis,* 97 F.3d at 883 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)).

### C. The Plaintiff's Prima Facie Case for Race Discrimination

To establish a prima facie case of race discrimination under Title VII, the plaintiff must establish that he is (a) a member of a protected class, (b) that he was qualified for the position, (c) the he suffered an adverse employment action, and (d) that the plaintiff was replaced by a member outside the protected class. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993).

The Plaintiff has not established a prima facie case of race discrimination in this action. Although the Plaintiff is a member of a protected class, and although whether the Plaintiff was qualified for the position is disputed by the parties, Plaintiff has failed to show any adverse employment action in this case, and the Plaintiff has failed to show that he was replaced by a member outside the protected class.

The first element of the prima facie case of race discrimination requires the Plaintiff to be a member of a protected class. The parties agree that the Plaintiff, as a black male, is a member of a protected class under Title VII.

The second element of the prima facie case of race discrimination requires that the Plaintiff be qualified for the position. On this element, the Plaintiff and the Defendant cannot agree. While normally a dispute between the parties regarding the existence or nonexistence of an element of the prima facie case would preclude summary judgment, in this instance, the Court finds it unnecessary to resolve this factual dispute between the parties as several other deficiencies in the Plaintiff's case make summary judgment appropriate. Thus, even assuming as true that the Plaintiff was qualified for the position, summary judgment in this case would still be appropriate.

■ The third element of the prima facie case of race discrimination requires that the Plaintiff show that he was subjected to "adverse employment action." The Defendant claims that he experienced adverse employment action in that he lost the opportunity at overtime, was deprived of supervisory authority, and that his responsibilities were "significantly reduced." That the Plaintiff experienced some job changes is not enough

to establish that he was subjected to adverse employment action. Moreover, the Plaintiff has offered no evidence to support his claims as required by *Street v. J.C. Bradford & Co.,* 886 F.2d at 1478.

For both the race discrimination and the retaliation claims, the plaintiff must show that reassignment was a "materially adverse change in the terms of [his] employment." *Kocsis,* 97 F.3d at 885 (citation omitted). A change in the terms of employment is "materially adverse" when the plaintiff received "significantly diminished material responsibilities," including "termination of employment, demotion evidenced by a decrease in wage or salary, less distinguished title, material loss of benefits, or other indices that might be unique to a particular situation." *Kocsis,* 97 F.3d at 886 (citation omitted). However, certain factors may be deemed insufficient as a matter of law to overcome the cumulative weight of the other facts that are present. *See Kauffman v. Kent State University,* 21 F.3d 428, 1994 WL 112874 at *4 (6th Cir.1994) (finding that "[a] reduction in promotional opportunities [was] insufficient as a matter of law to overcome the cumulative weight of other factors."); *see also Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) ("Mere allegations may no longer suffice to get a plaintiff's case to the jury. [T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact.").

A lateral transfer can be actionable as an "adverse employment action" if the conditions of the transfer would have been objectively intolerable to a reasonable person, thereby amounting to a constructive discharge. *Darnell v. Campbell County Fiscal Court,* 924 F.2d 1057, 1991 WL 11255 at *3 (6th Cir.1991). In order to maintain an action for constructive discharge, the plaintiff must show that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Kocsis,* 97 F.3d at 887. A lateral transfer involving a loss of prestige or an objectively demeaning change of working conditions—such as re-

moval from a private office—can amount to constructive discharge. *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990), *aff'd,* 924 F.2d 1057, 1991 WL 11255 (6th Cir.1991). However, in considering whether a lateral transfer amounts to a constructive discharge, subjective considerations are insufficient, *id.,* and therefore objective factors must be considered.

Here, applying the factors outlined in *Kauffman* and *Kocsis,* the Court notes that the Plaintiff's grade level, salary, and benefits remained the same, although there is some evidence the Plaintiff's job duties and work environment changed, including the loss of opportunity for overtime and the loss of supervisory responsibility. However, the Court finds that because the Plaintiff has the same salary and benefits in the transfer position as he did in his previous position, the fact that his new position has a new title and different responsibilities is not sufficient as a matter of law to overcome the cumulative weight of the other evidence presented in this case. The Plaintiff has presented no evidence that his working conditions were objectively intolerable to a reasonable person or that he experienced a materially adverse change in the terms of his employment.

The fourth and final element of the prima facie case of race discrimination requires that the Plaintiff show that he was replaced by a member outside the protected class. The Plaintiff contends that "although Plaintiff's position has not technically been filled, the acting superintendent is Dave Yacchari, a white male," and cites to the deposition of Gary Ketron (p. 37). The Defendant, on the other hand, states that the individual who replaced the Plaintiff immediately after his change in position was a black male, and also cites to the deposition of Gary Ketron (p. 43). The parties seem to agree, however, that at least initially, the Plaintiff was replaced by a black male who served as acting County Superintendent. (Joint Final Pretrial Order at 7). Because the Plaintiff and the Defendant are not in dispute as to the whether the Plaintiff's replacement was outside the protected class, and because the Plaintiff has not presented any evidence to support his burden of proof on the issue of

replacement by a member outside the protected class, the Plaintiff has failed to establish the fourth and final element of his prima facie case.

Because the Plaintiff has failed to show adverse employment action and has failed to establish that he was replaced by a member outside the protected class, he has not established a prima facie case as required by the *McDonnell Douglas* framework.

### D. The Plaintiff's Prima Facie Case for Retaliation

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), forbids discrimination against employees for attempting to protest or correct allegedly discriminatory conditions of employment. *McDonnell Douglas*, 411 U.S. at 796, 93 S.Ct. at 1821. To establish a prima facie case of retaliation under Title VII, the plaintiff must establish that he (a) engaged in activity protected by Title VII, (b) that the exercise of his civil rights was known to the defendant, (c) that the defendant thereafter took employment action adverse to the plaintiff, and (d) that there was a causal connection between the protected activity and the adverse employment action. *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1118 (6th Cir.1996), *cert denied*, —— U.S. ——, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996).

The Plaintiff has not established a prima facie case of retaliation in this action. Although the Plaintiff engaged in activity protected by Title VII, and although whether that activity was known to the Defendant is disputed by the parties, the Plaintiff has failed to show any adverse employment action in this case and has failed to establish a causal connection between the protected activity and the adverse employment action.

The first element of the prima facie case of retaliation requires the Plaintiff to show that he engaged in activity protected by Title VII,[1] which is undisputed by the parties. The Plaintiff, prior to the bringing of this suit, had filed three charges of discrimination with the Ohio Civil Rights Commission and

the Equal Employment Opportunities Commission ("EEOC") against the Defendant alleging race discrimination and retaliation. Two complaints were filed in 1986, and the other was filed on December 9, 1992, two days after the Plaintiff's transfer. The 1992 complaint is based upon the Plaintiff's December 7, 1992, transfer and resulted in the Right to Sue Letter that authorizes the suit that is before the Court today. The action of filing a complaint alleging employment discrimination with the proper state and federal agencies is clearly protected activity under Title VII.

The second element of the prima facie case of retaliation requires the Plaintiff to show that the exercise of his civil rights (the activity protected by Title VII) was known to the Defendant. Whether the decisionmaker for the Defendant, Gary Ketron, knew of the 1986 complaints is in dispute. However, the Court finds it unnecessary to resolve this factual dispute between the parties as several other deficiencies in the Plaintiff's case make summary judgment appropriate. Thus, even assuming as true that the Defendant knew about the 1986 complaints that were filed by the Plaintiff, summary judgment in this case would still be appropriate.

■ The third element of the prima facie case of retaliation requires the Plaintiff to show that the Defendant, after the Plaintiff engaged in activity protected by Title VII, took adverse employment action against the Plaintiff. This element is the one element that is common to both the claims of race discrimination and retaliation under Title VII, and for the reasons stated above in the section regarding the Plaintiff's race discrimination claim, the Plaintiff has failed to establish this element of the prima facie case for retaliation.

■ The fourth element of the prima facie case of retaliation requires the Plaintiff to show a causal connection between the protected activity and the adverse employment action. To meet this element, the Plaintiff must show that the decision to transfer was

---

1. *See* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has ... made a charge ... under this subchapter.").

causally related to his protected activity. *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987).

At the outset, it should be noted the protected activity must have occurred prior to the alleged acts of retaliation. Because the Plaintiff alleges only that the decision to undertake the work environment study and the subsequent decision to transfer were discriminatory, the protected activity for which the Plaintiff bases his retaliation claim must have predated December 7, 1992, the date of his transfer. Thus, the Court's inquiry is limited to the Plaintiff's protected activity in the filing of the two 1986 complaints.

█ The Court finds that a claim of retaliation based on protected activity in the form of complaints filed six years ago is too tenuous as matter of law to constitute a causal connection. Although the Sixth Circuit has held that a temporal proximity between the protected activity and adverse employment action may give rise to an inference of a causal connection, *Moon*, 836 F.2d at 229, the Court finds that in this case, the opposite is true as well. When adverse employment action occurs shortly after a plaintiff engages in protected activity, an inference of causal connection may be warranted; however, when adverse employment action occurs *years* after the plaintiff engages in protected activity, no such inference is created. *See Hill v. Judson Retirement Community*, 775 F.Supp. 1090, 1096 (N.D.Ohio 1991), *Wheelwright v. Clairol, Inc.*, 770 F.Supp. 396, 401 (S.D.Ohio 1991), *Brown v. ASD Computing Center*, 519 F.Supp. 1096, 1116 (S.D.Ohio 1981). It strains credulity for the Court to entertain an allegation that the Defendant waited six years before retaliating against the Plaintiff for his engaging in protected activity, and in light of the fact that the Plaintiff offers no evidence other than conclusory allegations to support his claim, the Court cannot find a causal connection between the protected activity and the alleged adverse employment action.

The Court has concluded that the Plaintiff has not established a prima facie case for either his claim of race discrimination or his claim of retaliation. However, it is evident, for the reasons set forth below, that even if the Plaintiff had established the prima facie case for either of his claims, summary judgment would still be appropriate because the Defendant has articulated a legitimate, nondiscriminatory reason for its conduct, which the Plaintiff has failed to rebut.

### III.

### A. Defendant's Articulation of Legitimate, Nondiscriminatory Reason

The Plaintiff essentially claims that one or both of two actions taken by the Defendant were discriminatory. The first is the decision to undertake the work environment study, and the second is the decision to transfer the Plaintiff.

### (1) The Decision to Undertake the Work Environment Study

The Plaintiff asserts that the Defendant retained Dr. Martin to perform the work environment study with the intention of harassing and intimidating the Plaintiff and causing him to vacate his position of County Superintendent. The Plaintiff further alleges that the procedure undertaken by Dr. Martin at the request of the Defendants was an extraordinary measure not usually performed with ODOT, and that the procedure was performed with the intention to discriminate against the Plaintiff because of his race and as retaliation for having previously complained about discrimination.

To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, that one of three factors is present: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that the proffered reasons were insufficient to motivate the action. *Kocsis*, 97 F.3d at 883 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir.1994)). The plaintiff bears the ultimate burden of persuading the trier of fact that illegal discrimination took place. *Kocsis*, 97 F.3d at 883 (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94). Here, the Plaintiff has failed to show any of the three factors outlined in

*Kocsis* which might preclude summary judgment are present.

The Defendant maintains that the work environment study was undertaken to address complaints about the Plaintiff to Gary Ketron from the Plaintiff's subordinates. Such complaints are legitimate, nondiscriminatory reasons for undertaking such a study. The Plaintiff does not dispute that these complaints by subordinates were made; therefore, the Plaintiff cannot show that the proffered reason had no basis in fact and the first factor outlined in *Kocsis* is not present.

The Defendant did not, on the basis of the then-unsubstantiated complaints alone, make its decision to transfer the Plaintiff. Instead, the Defendant merely hired a consultant to investigate the matter. Although the Plaintiff alleges that the conducting of a work environment study is "an extraordinary measure not usually performed within ODOT," this statement is both unsupported and conclusory. Additionally, the fact that Gary Ketron had previously retained another private consultant to evaluate the work performance of another employee (a white male, also in District #8) which is undisputed by the parties, weighs heavily in support of the validity of the Defendant's articulated legitimate nondiscriminatory reason for the decision to undertake the study.

Moreover, it is undisputed that the police had to be summoned to the Hamilton County Garage based on a reported dispute between the Plaintiff and one of his subordinates, Karen Handley. The Court need not determine the exact sequence of events that transpired leading up to the police being called to the Garage to conclude that whatever necessitated the call might also lead a reasonably cautious employer to decide to undertake a work environment study such as the one undertaken by the Defendant. Some inquiry or investigation by an employer based on incidents that resulted in the police being summoned to resolve an alleged dispute between a supervisor and subordinate would most certainly need to be made if for no other reason than to protect the employer from possible liability for negligence in not investigating the employee's actions.[2] The Defendant before the Court chose to make this necessary inquiry or investigation in the form of a work environment study performed by an independent consultant.

The Court finds, as a matter of law, that the proffered reason was sufficient to motivate the undertaking of the work environment study and therefore the third factor outlined in *Kocsis* which might preclude summary judgment is not present. For reasons stated throughout this order, the Plaintiff has failed to present any evidence or raise any inference of discrimination or retaliation on the part of the Defendant. The plaintiff has not shown that the proffered reason did not actually motivate the Defendant's action and therefore the second factor outlined in *Kocsis* which might preclude summary judgment is not present.

### (2) The Decision to Transfer the Plaintiff

The Plaintiff asserts that the Defendant's decision for his transfer was discriminatory. The Defendant asserts that it acted upon the results of Dr. Martin's work environment study in transferring the Plaintiff. For reasons outlined above, the Defendant had legitimate, nondiscriminatory reasons for under-

**2.** Such liability could result if an employee assaulted a fellow employee or member of the public and the employer had been put on notice as to the employee's potential for violence. Negligent hiring is a recognized tort in Ohio and is separate and distinct from other theories of recovery such as negligent entrustment and respondeat superior. *Byrd v. Faber*, 57 Ohio St.3d 56, 62, 565 N.E.2d 584 (1991). The primary issue in a negligent hiring case is whether the employer knew or should have known of the employee's criminal or tortious propensities. *Id.*

The Court does not wish to imply that the Plaintiff in this case exhibited violent, criminal, or tortious tendencies on the day the police were summoned, or indeed that he exhibited violent, criminal, or tortious tendencies on any day during his tenure with ODOT. No evidence is before the Court on this matter other than the undisputed fact that the police were summoned because of a dispute between the Plaintiff and one of his subordinates—no evidence has been presented regarding what events transpired that led to the police being summoned. The Court is merely stating that the fact that someone felt the need to summon the police regarding an incident in the workplace, for whatever reason, might be construed to put the employer on notice as to an employee's violent, criminal, or tortious tendencies, thereby subjecting the employer to liability.

taking the study performed by Dr. Martin. Absent allegations and evidence that the Defendant, through Dr. Martin, conducted the study in a discriminatory manner, if the reasons for conducting the study are legitimate and nondiscriminatory, actions reasonably taken upon the results of the study likewise fulfill the Defendant's burden of production to articulate legitimate, nondiscriminatory reasons for its actions.

In short, the Defendant has articulated a legitimate, nondiscriminatory reason for its actions that is supported by the undisputed facts in this case; thus, the Defendant has met its burden of production as required by *McDonnell Douglas*, and has successfully shifted the burden to the Plaintiff to show that the Defendant's proffered reasons were not its true reasons, and were merely pretext for illegal discrimination.

### B. Plaintiff's Burden to Show Pretext

■ The Plaintiff, in attempting to carry his burden to show pretext, states that the Defendant did not suggest any remedial steps which might enable the Plaintiff to keep his position, and that the Defendant. transferred him contrary to the established and mandated procedure set forth under Ohio Civil Service Laws. The failure on the part of the Defendant to suggest remedial steps is simply insufficient as a matter of law to show pretext on the part of the Defendant in this case. The thrust of the Plaintiff's argument is that the Defendant deviated from its usual course of action in its decision to transfer the Plaintiff. Even assuming that this disputed fact is true, the Plaintiff has still failed to show pretext.

It is important to remember that the Plaintiff bears the burden of proving discriminatory intent on the part of the Defendant.

The Plaintiff offers *no* evidence to support his allegations that the decision to conduct the work environment study was discriminatory, and offers *only* the assertion that the Defendant failed to suggest remedial steps to support his allegations that the transfer itself was discriminatory. It seems to the Court, however, that the Defendant undertook the work environment study for legitimate, nondiscriminatory reasons, and that the Defendant then acted on the results of the study in a legitimate, nondiscriminatory manner. The Court would so find even assuming as true the Plaintiff's assertion that the Defendant deviated from its normal course of action in its decision to transfer the Plaintiff.

■ Likewise, the failure to follow procedures set forth under Ohio Civil Service laws, if indeed such failure was present, does not imply discriminatory intent. Essentially, the Plaintiff is alleging that his due process rights were violated.[3] In a Title VII action, if the Plaintiff is to offer denial of due process rights as proof of discrimination, it is not enough that the Plaintiff prove a simple denial of due process; rather, to recover damages under Title VII, the Plaintiff must prove that the Defendant discriminated intentionally against the Plaintiff in the denial of due process. While there are certainly cases in which an action seeking damages under 42 U.S.C. § 1983 for denial of due process may properly be maintained in conjunction with a Title VII action, and while some of the evidence offered to support one cause of action may simultaneously support the other cause of action, a finding of a violation of one of the causes of action does not necessitate the finding of a violation of the other cause of action. The two are simply wholly different causes of action. The Plaintiff points to no authority that states

**3.** In his Memo Contra (doc. # 14), the Plaintiff states that "[the Plaintiff] was in the classified civil service and entitled to the protections of the civil service laws.... A classified employee has the right to remain in his position absent a showing of cause. The actions of [the Defendant] in forcing [the] Plaintiff to transfer from his position, ... circumvented the procedures and protections of the law." In essence, this is an allegation that the Plaintiff was denied procedural due process. Procedural due process imposes constraints on governmental decisions which de-

prive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). An individual can have a "property" interest in continued employment. *See Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972).

The Court does not address this case as a denial of due process rights case as a § 1983 cause of action was not alleged in this case.

that an alleged denial of due process supports an inference of illegal discrimination under Title VII and the Court has found no such authority in its research.

Moreover, the Court has already found, for reasons set forth above, that the Plaintiff's transfer in this case was not "adverse employment action" within the meaning of Title VII. Therefore, the Plaintiff was not deprived of his due process rights because his property interest in his job, if he has such an interest, was not adversely affected.

In short, the Plaintiff has failed to show that the Defendant's articulated legitimate, nondiscriminatory reason is pretextual.

### IV.

The Plaintiff has failed to establish a prima facie case for either race discrimination or retaliation under Title VII. The Defendant has articulated a legitimate, nondiscriminatory reason that the Plaintiff has failed to show as pretextual. Some concrete, affirmative proof of discriminatory or retaliatory intent or effect must be offered by the Plaintiff to establish a prima facie employment discrimination case and to rebut the Defendant's articulated legitimate, nondiscriminatory reason for its actions. *Herron v. Tennessee Bd. of Regents*, 42 F.3d 1388, 1994 WL 669648 at *4 (6th Cir.1994) (citing *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir. 1989)), *cert. denied*, —— U.S. ——, 115 S.Ct. 2246, 132 L.Ed.2d 255 (1995). The Plaintiff has offered no such concrete, affirmative proof.

Based on the undisputed facts in the record, along with certain assumptions made in favor of the nonmoving party as detailed throughout this order, the Defendant is entitled to judgment as a matter of law.

For all of the foregoing reasons, the Defendant's Motion for Summary Judgment is hereby **GRANTED.**

**LET JUDGMENT STAND IN ACCORDANCE WITH THE FOREGOING.**