### Carolyn R. RUSSELL, Plaintiff–Appellant,

v.

### Sandra DRABIK, et al., Defendants–Appellees.

### No. 00–4117.

United States Court of Appeals, Sixth Circuit.

Dec. 4, 2001.

Before MERRITT and DAUGHTREY, Circuit Judges; and WELLS, District Judge.*

* The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

MERRITT, Circuit Judge.

Plaintiff Carolyn Russell brings this 42 U.S.C. § 1983 claim alleging race discrimination by Defendants Sandra Drabik and the Ohio Department of Administrative Services. Specifically, Plaintiff alleges that the Defendants discriminated against her as an African–American by failing to promote her while simultaneously promoting white employees. She also asserts that race was the determining factor in her transfer from one department to another within the Ohio state government. The district court granted the Defendants' motion for summary judgment on both claims. For the reasons that follow, we AFFIRM the decision of the district court.

### Facts

The Plaintiff, an African–American woman, has worked for the state of Ohio's Department of Administrative Services from 1972 until the present. Within the department, she initially worked for the Equal Opportunity Division, starting at the state's Administrative Assistant I classification and being promoted to the Administrative Assistant II classification in 1973. In 1983, under the same classification, Plaintiff received the working title of "board administrator" for the so-called "Set Aside Review Board." As the board administrator, Plaintiff provided administrative support to the review board. In 1985, Sharon Hudson, who is also African–American, took over the working title of "board administrator" and continued in that position until 1995. During this time, Plaintiff maintained the same Administrative Assistant II classification while working for the review board and assisting Ms. Hudson. In June 1995, Hudson was transferred from the review board to the division, at which time the Plaintiff became the acting board administrator.

In January 1994, Plaintiff applied for reclassification as Administrative Assistant III to Defendant Drabik, who at the time was the division's Assistant Director and General Counsel. Despite Plaintiff's qualifications, the position was instead awarded to Julie Trackler, a white female that Plaintiff alleges did not possess the minimum qualifications. In addition, Plaintiff claims that Defendants again refused to reclassify her in the fall of 1994 despite the recommendations of Carolyn Harper, the state Equal Opportunity Division Coordinator, and James Conrad, the director of the department.

After several other alleged instances of disparate treatment, Plaintiff filed charges with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission on November 19, 1996. In early 1997, the Plaintiff was transferred from the review board to the state of Ohio Computer Center. At the computer center, Plaintiff received the same compensation and benefits and continued to be classified as an Administrative Assistant II. After the transfer, Plaintiff amended her charges on two occasions, claiming that the transfer was a constructive demotion in which her race was a determining factor. The parties dispute whether Plaintiff's new job requires her to perform similar administrative functions or relegates her to more menial tasks. The Defendants' rationale for Plaintiff's transfer was that there was a lack of work at the review board, which had a declining number of waiver applications.

After the EEOC granted leave to file the lawsuit, Plaintiff filed her initial complaint in September of 1997, and alleged race discrimination under 42 U.S.C. § 2000e ("Title VII"), age discrimination under 29 U.S.C. § 621 ("Age Discrimination in Employment Act"), race discrimination under Ohio state law, and conspiracy

under 42 U.S.C. § 1985. In March of 1998, she amended her complaint, adding retaliation claims under Ohio state law and Title VII, and age and race discrimination claims under 42 U.S.C. § 1983. The district court granted the Defendants' motion to dismiss the Title VII, ADEA, 42 U.S.C. § 1985, and Ohio state law claims. In addition, the district court granted the Plaintiff leave to amend her § 1983 claims to specify the equitable relief she sought. In her second amended complaint, Plaintiff claimed violations of race discrimination under 42 U.S.C. § 1983 for Defendants' failure to promote and for her transfer to Computer Services as a constructive demotion. The district court then granted Defendants' summary judgment motion as to Plaintiff's § 1983 claims of race discrimination. Plaintiff timely filed her notice of appeal.

### Discussion

We review a district court's grant of summary judgment *de novo,* using the same standards as applicable to the district court. *Williams v. General Motors Corp.,* 187 F.3d 553, 560 (6th Cir.1999).

Before addressing the merits of the Plaintiff's claims, we must address the jurisdictional question of whether Plaintiff's 1983 claims of race discrimination are preempted by Title VII. When Congress made Title VII applicable to state and local employees, it was "envisioned as ... an additional remedy to redress employment discrimination ... [and] therefore ... [did] not affect existing rights ... granted by previous legislation." H.R.Rep. No. 92–238, reprinted in 1972 U.S.Code Cong. & Adm. News 2137, 2154. This language, however, does not indicate a Congressional intent to allow employees to sue their public employer under both Title VII and § 1983 when the right to be vindicated is one created solely by Title

VII. *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204–05 (6th Cir.1984). As a result, where a right arises solely out of Title VII, a Plaintiff may not use § 1983 to circumvent the procedural framework instituted by Congress. *Id.* By contrast, "where an employee establishes employer conduct that violates Title VII and rights derived from another source—the Constitution or federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by § 1983 in addition to those created by Title VII." *Id.* at 1205. *See also Grano v. Department of Development, City of Columbus,* 637 F.2d 1073 (6th Cir.1980)(holding that an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution). Here, Plaintiff raises a failure to promote claim and a constructive demotion claim, and argues that both arise under the Equal Protection Clause of the Fourteenth Amendment. The failure to promote claim clearly arises under the Equal Protection Clause and thus is not preempted by Title VII. To the extent that Plaintiff's constructive demotion claim alleges a transfer based on the Plaintiff's race, it also survives preemption. However, to the extent that Plaintiff's constructive demotion claim alleges a transfer based on retaliation, a right arising under Title VII, it is barred. Thus, we will consider the merits of Plaintiff's constructive demotion claim under an Equal Protection theory of race discrimination.

In addition to the jurisdictional issue, we must also address the application of the statute of limitations to Plaintiff's failure to promote claim. Both parties agree that Ohio's two year statute of limitations applies in this case. *See Owens v. Okure,*

488 U.S. 235, 251–52, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)(the relevant state statute of limitations for personal injury is applied in § 1983 cases); *see* Ohio Code § 2305.10 (giving a two year statutory limit to personal injury actions). Thus, Plaintiff cannot recover for injuries that occurred prior to September 1995.

■ ˚To the extent that Plaintiff is alleging continual discrimination in an attempt to bring pre–1995 claims within the statute of limitations, her claims fail under the standards set out in *Kovacevich v. Kent St. Univ.,* 224 F.3d 806 (6th Cir.2000) and *Dixon v. Anderson,* 928 F.2d 212 (6th Cir. 1991), because there is no evidence of present discriminatory activity giving rise to a claim of continual violation and there is no showing of a long-standing policy of discrimination.

In its opinion, the district court implicitly found that the two year statute of limitations foreclosed plaintiff's failure to promote claim. Reviewing the record, however, there is evidence that the Plaintiff asked for reclassification and a pay increase in June, 1996, and that the Defendants denied this request in August, 1996. Therefore, while not completely foreclosed by the statute of limitations, Plaintiff's failure to promote claim is limited to the 1996 denial.

■ The Plaintiff has the burden of establishing a *prima facie* case of race discrimination for the Defendants' failure to promote. She must show that (1) she is a member of a protected class, (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected for the job; and (4) that other employees of similar qualifications who were not members of the protected class were promoted at the time plaintiff's request for a promotion was denied. *See McDonnell Douglas Corp.v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Abrams v. Johnson,* 534. F.2d 1226, 1230–31 (6th Cir.1976) (adapting *McDonnell Douglas* to a failure to promote situation). Under the *McDonnell Douglas* framework, if the plaintiff can establish her *prima facie* case, the defendant then has the opportunity to articulate a legitimate, non-discriminatory reason for the adverse action against the plaintiff. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–09, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant produces a legitimate reason, the burden then shifts back to the plaintiff to establish that defendant's proffered reason is a mere pretext for discrimination. *Hicks,* 509 U.S. at 509–11, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Here, Plaintiff is a member of a protected class as an African–American and was clearly qualified for the Administrative Assistant III position, having served as an Administrative Assistant II for twenty years (far in excess of the one year required). In addition, she meets the third prong of the *McDonnell Douglas* test because failure to promote generally constitutes a materially adverse employment action. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 562–63 (6th Cir.2000). Plaintiff, however, has failed to establish that she was treated differently than similarly-situated employees *during the period in question.*

In order to establish that non-minority employees were similarly situtated, the plaintiff must show that the "comparables" are "similarly situated in all respects." *Stotts v. Memphis Fire Department,* 858 F.2d 289 (6th Cir.1988). In addition, to be deemed "similarly situated," the individuals with whom the plaintiff seeks to com-

pare her treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). This Court has broadly construed this standard to include "all relevant aspects" of the Plaintiff's employment. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Plaintiff argues that, during the relevant statutory period, Julie Trackler, Nikki Guilford, and Jason Straub were similarly situated white employees who received preferential treatment. A closer examination reveals that none of the three fall within the category of "similarly situated." Both Guilford and Straub were unclassified state employees with job titles of "Policy Staff," while Russell is a classified state employee. As a matter of law, classified (tenured) and unclassified (untenured) employees are not similarly-situated. *See, e.g. Vargas v. Globetrotters Engineering Corp.*, 4 F.Supp.2d 780, 785 (N.D.Ill.1998). In addition, Trackler, while similarly-situated for the Administrative Assistant III position she was awarded in 1994, was not similarly-situated to Plaintiff in 1996, when she was promoted to Administrative Assistant IV. As compared to the more clerical duties performed by the Plaintiff at the time, Trackler performed much more sophisticated tasks such as formulating and implementing various policies, and drafting and filing administrative code provisions. Because the Plaintiff cannot establish that the claimed "comparable" positions required "equal skill, effort, and responsibility," and were "performed under similar working conditions," we find that the Plaintiff cannot establish a *prima facie*

case of race discrimination for failure to promote.

■ For Plaintiff's discriminatory transfer claim, she must similarly demonstrate the four *prima facie* elements of *McDonnell Douglas:* (1) the plaintiff was a member of a protected class; (2) the plaintiff was subject to an adverse employment action; (3) the plaintiff was qualified for the job; and (4) the plaintiff was treated differently than employees outside the protected class for the same or similar conduct. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) (adapting *McDonnell Douglas* to a discharge/demotion situation).

While again satisfying the protected class and qualification requirements, Plaintiff is unable to demonstrate that the transfer was materially adverse. Ordinarily, reassignments without salary or work hour changes do not constitute adverse employment actions in employment discrimination claims. *Yates v. Avco Corp.*, 819 F.2d 630 (6th Cir.1987). The reassignment must cause a "materially adverse change in terms of [her] employment." *Kocsis v. Multi–Care Mgmt.*, 97 F.3d 876, 885 (6th Cir.1996). To establish that a change in terms of employment is materially adverse, the Plaintiff must show that she received "significantly diminished material responsibilities, including termination of employment, demotion evidenced by a decrease in wage or salary, less distinguished title, material loss of benefits, or other indices that might be unique to a particular situation." *Id.* at 886.

On its face, Plaintiff's transfer was not a demotion, but a transfer of positions based on Defendants' organizational needs, where the Plaintiff maintained the same classification, salary, and benefits. A lateral transfer, however, can be actionable as an "adverse employment action" if the

conditions of the transfer would have been objectively intolerable to a reasonable person, thereby amounting to a constructive discharge. *Joiner v. Ohio DOT,* 949 F.Supp. 562, 567 (S.D.Ohio 1996). In order to maintain an action for constructive discharge, Plaintiff must show that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Kocsis,* 97 F.3d at 887. In addition, a lateral transfer involving a loss of prestige or an objectively demeaning change of working conditions can amount to constructive discharge. *Joiner,* 949 F.Supp. at 567.

Here, applying the relevant factors, we find that although there is some evidence the Plaintiff's job duties and work environment changed, that alone is not sufficient as a matter of law to overcome the cumulative weight of the other evidence presented in this case. *Id.* While her duties may be different than those prior to transfer, the Plaintiff has presented no evidence that her working conditions were objectively intolerable. Thus, we hold that Plaintiff is unable to establish a *prima facie* case of discriminatory transfer because she has not experienced a materially adverse change in the terms of her employment.

Even if the Plaintiff could establish that her transfer was materially adverse, her claim would fail because the Defendants have a legitimate business reason to explain the transfer and the Plaintiff cannot demonstrate pretext. The Defendants transferred the Plaintiff because of a decrease in work coinciding with a simultaneous need in the Computer Services Department. Plaintiff's claim of pretext fails because there is no evidence in the record that the transfer resulted from an intent to discriminate. Plaintiff's additional hypothesis that the transfer was in retaliation to her filing of the EEOC claim may have

some merit, but is outside of this Court's jurisdiction as explained supra.

Thus, Plaintiff's race discrimination claims of failure to promote and transfer are without merit. Based on the foregoing, we AFFIRM the judgment of the district court.